UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CHIRAG C.,[1]

　　　　　　　　Petitioner,

　　v.

PAM BONDI, et al.,

　　　　　　　　Respondents.

No. 1:26-cv-00831-JLT-SKO (HC)

**FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS**

**[Doc. 1]**

**[7-DAY OBJECTION DEADLINE]**

Petitioner Chirag C. is a citizen of India who entered the United States without inspection on or about February 23, 2023. (Doc. 12-1 at 1-2.) He was encountered by U.S. Border Patrol shortly after crossing the border, apprehended, and processed. (Doc. 12-1 at 6.) Petitioner claimed a credible fear of persecution and was placed in full removal proceedings under Immigration and Nationality Act ("INA") § 240. (Doc. 13 at 4.)

On May 2, 2023, Petitioner was served a Notice to Appear, and on or about May 9, 2023, he was released on his own recognizance with a pending court date. (Doc. 1 at 4; 12-1 at 6.) He has filed applications for asylum, withholding of removal, and protections under the Convention Against Torture, which are currently pending. (Doc. 1 at 5.) Petitioner spent the next two years

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

and several months living openly in the United States. (Doc. 13 at 3.)  He possesses a work authorization card from USCIS and was gainfully employed by Amazon, Inc., for 21 months prior to re-detention. (Doc. 1 at 5.) He has no criminal record, and he states he has complied with all conditions of supervision. (Doc. 13 at 3.) Respondents assert Petitioner was re-detained due to his violations of conditions of supervision, but offer no details or evidence of the alleged violations. (Doc. 12 at 1-2; 12-1 at 6.)

On November 13, 2025, Petitioner was contacted by Immigration and Customs Enforcement ("ICE") and instructed to report to the Fresno ICE sub-office. (Doc. 12-1 at 6.) On November 15, 2025, Petitioner reported as instructed and was arrested and detained. (Doc. 12-1 at 6.) Petitioner states he was given no notice, explanation, or any claim of changed circumstances. (Doc. 1 at 5.)

On January 30, 2026, Petitioner filed the instant habeas petition challenging his re-detention, as well as a motion for temporary restraining order. (Docs. 1, 2.) On February 2, 2026, the District Court denied the motion and directed Respondents to file a response within thirty (30) days. (Doc. 6.)

On March 3, 2026, Respondents filed a response to the petition. (Doc. 12.) On March 4, 2026, Petitioner filed a reply to the response. (Doc. 13.)

## I.    JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

## III.   DISCUSSION

Civil immigration detention is typically justified only when a noncitizen presents a risk of

2

flight or danger to the community.  See Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Petitioner contends that Respondents have wrongly subjected him to mandatory detention pursuant to 8 U.S.C. § 1225(b); he claims he is detained pursuant to § 1226(a) and should be afforded the process due thereunder. (Doc. 1 at 15-16.) He further contends that the Government violates his procedural due process rights when he was re-detained without meaningful notice and opportunity to contest the legal basis for his confinement. (Doc. 13 at 10-11.)

Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. §1225(b)(1)(B)(ii). (Doc. 12 at 2.) Respondents also contend that Petitioner's detention under § 1226(b), without provision for a bond hearing, is constitutional. (Doc. 12 at 3.) As discussed below, these arguments are without merit.

Apparently abandoning its previous argument that Petitioner, as an "applicant for admission," is subject to mandatory detention under § 1225(b)(2)(A), Respondents now claim Petitioner is being mandatorily detained under § 1225(b)(1).[2] Respondents contend that because Petitioner was initially detained under § 1225(b)(1) when first encountered in 2023, and because he was then detained for further consideration of his application for asylum after he claimed fear of persecution, he is still subject to § 1225(b)(1) despite having been released on an order of supervision and having lived in the United States for the past two plus years. Petitioner is still an "applicant for admission" as a noncitizen who is "arriving" to the United States. (Doc. 12 at 2-3). Respondents' argument lacks merit.

Title 8 U.S.C. §1225(b)(1), by its own language,  governs the "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." According to Section 1225(b)(1)(A)(i), a noncitizen "who is arriving in the United States" and satisfies the other criteria is subject to mandatory detention pending expedited removal. The plain

---

[2] The Government does not explain why it does not claim that Petitioner is detained pursuant to § 1225(b)(2) as it has in most other cases, rather than § 1225(b)(1). The Court surmises this new position is due to the overwhelming weight of authority in the Circuit against their § 1225(b)(2)(A). The change lends credence to Petitioner's argument that the Government's exercise of its authority to re-detain was arbitrary and capricious.

3

meaning of the word "arriving" is being "in the process of reaching" a destination. Coalition for Humane Immigrant Rights v. Noem, 805 F. Supp. 3d 48, 90 (D.D.C. 2025). The words "arriving," "arrival," and "arrive" in Section 1225 appear to refer to a process that occurs upon physical entry into the United States, "not an interminable ... status" that attaches to a noncitizen upon arrival. Id. (citing approvingly this argument made by plaintiffs based on the text of 8 U.S.C. § 1225(b)(1)(A)(i), (F), (b)(2)(C), (d)(2)). Therefore, an "arriving alien" is one who is in the process of reaching the United States. See United States v. Rowland, 826 F.3d 100, 108 (2d Cir. 2016) ("If the meaning [of a statute] is plain, the inquiry ends there."); Torres v. Holder, 764 F.3d 152, 156 (2d Cir. 2014), aff'd sub nom. Torres v. Lynch, 578 U.S. 452, 136 S.Ct. 1619, 194 L.Ed.2d 737 (2016) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.") Because Petitioner was initially apprehended in 2023 and then released and allowed to live in the United States for over two years, he cannot be classified as a noncitizen "who is arriving in the United States." Respondents' citation to Section 1225(b)(1)(B)(ii) does not merit a different conclusion.

Under § 1225(b)(1)(B)(ii), "[i]f the officer determines at the time of the interview that an alien has a credible fear of persecution . . ., the alien shall be detained for further consideration of the application for asylum." Petitioner claimed a fear of persecution but was then released on his own recognizance pursuant to § 1226(a) pending INA § 240 removal proceedings. The Government's contention that his re-detention places him back to an "arriving" alien status is illogical. As the Supreme Court noted in Jennings, section 1225 applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." Jennings v. Rodriguez, 583 U.S. 281, 287, 138 S.Ct. 830 (2018). Section 1225 "authorizes the Government to detain certain aliens seeking admission into the country," whereas section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." Id., 583 U.S. at 289, 138 S.Ct. 830 (emphasis added). As other courts have done, the Court finds Petitioner's detention is not government by § 1225(b)(1). Petitioner was released pursuant to § 1226(a). See Sidqui v. Almodovar, No. 25-CV-

9349 (VSB), 2026 WL 251929, at *8 (S.D.N.Y. Jan. 30, 2026) (collecting cases).

Respondents' contention that § 1225(b) applies to aliens who have been released into the country and then re-detained years later has been almost universally rejected by district courts throughout the country, including this Court. Valencia v. Chestnut, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (noting that "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b) as applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b), provides the appropriate framework for noncitizens already residing in the United States," and collecting cases). As it has done on previous occasions, this Court recommends following the majority approach in finding that Petitioner's re-detention is governed by § 1226(a), not § 1225(b). See, e.g., Ortiz Donis v. Chestnut, 1:25-CV-01228-JLT, 2025 WL 2879514 at *3–6 (E.D. Cal. Oct. 9, 2025); see also M.R.R. v. Chestnut, No. 1:25-CV-01517-JLT, 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); Hortua v. Chestnut, et al., No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); Barco Mercado v. Francis, No. 25-CV-6582 (LAK), —— F.Supp.3d ——, ——, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled the DHS policy improper across 160 different judges sitting in about 50 different courts nationwide); Mirley Adriana Bautista Pico v. Kristi Noem, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); Armando Modesto Estrada-Samayoa v. Orestes Cruz, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).

The Court next turns to the analysis of Petitioner's due process claim. Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

**A. Petitioner Possesses a Protected Liberty Interest.**

A protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147–49 (1997). Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [Government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481–84.

Immigration officials' May 2023 release of Petitioner on his own recognizance pending his immigration proceedings was similar and allowed him to live in the country subject to supervision, but out of custody, for over 2 years. That time inherently allowed Petitioner to form "enduring attachments of normal life." Id. at 482. The Court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protective liberty interest.

Because the Court concludes that Petitioner has a protected liberty interest in his release, see Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); Ortega v. Kaiser, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest), the Court must next determine what process is due before the Government may terminate Petitioner's liberty.

### B. The Mathews Factors Demonstrate Petitioner is Entitled to a Pre-Deprivation Bond Hearing

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the Mathews v. Eldridge factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for over 2 years, and during that time, he has lived, worked, and developed ties in the community. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a

7

noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla, 704 F. Supp. 3d at 1172.  Petitioner has no criminal history, and while Respondents assert that Petitioner violated his release conditions, they have submitted no evidence of the alleged violations or described the violations.  Further, no neutral arbiter has determined whether the facts show that Petitioner is a flight risk or danger to the community. In the most recent hearing in Immigration Court, the Immigration Judge denied consideration of release on bond finding no jurisdiction to grant such relief. Given the absence of any procedural safeguards to determine if his detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." A.E., 2025 WL 1424382, at *5.

Third, although the Government has a strong interest in enforcing the immigration laws, the Government's interest in re-detaining Petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025).  In immigration court, custody hearings are routine and impose a "minimal" cost.  Doe, 2025 WL 691664, at *6. "If the Government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." Ortega, 415 F. Supp. 3d at 970.

On balance, the Mathews factors show that before Respondents could lawfully re-detain Petitioner, he was entitled to a bond hearing.  "'[T]he root requirement' of the Due Process Clause" is "that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)); see Zinermon, 494 U.S. at 127 ("[a]pplying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty").  And consistent with the numerous decisions of other courts in this circuit who have ruled on this issue, at such a hearing the burden would be on the Government to prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence.  See, e.g., Ramirez Clavijo v. Kaiser, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025) (reaching the same conclusion); Garcia, 2025 WL 1927596, at *5 (same); Pinchi v. Noem, No. 25-CV-05632-RMI

8

(RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025) (same); Ortega, 415 F. Supp. 3d at 970 (same); Doe, 2025 WL 691664, at *6 (same); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (same); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022) (same); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (same). Accordingly, Petitioner's detention is in violation of the Due Process Clause of the Fifth Amendment.

## V.    CONCLUSION & RECOMMENDATION

The Court therefore concludes that Respondents violated Petitioner's due process rights when they re-detained Petitioner without first having conducted a pre-deprivation hearing before a neutral arbiter where the Government established that Petitioner was a flight risk or danger to the community such that his physical custody was legally justified. The Court further concludes that Respondents are improperly detaining Petitioner without a bond hearing under § 1225(b), rather than the correct detention statute: § 1226(a). For the foregoing reasons, the Court hereby RECOMMENDS:

1) The petition for writ of habeas corpus be GRANTED;

2) Petitioner be RELEASED from detention; and

3) Respondents be ENJOINED and RESTRAINED from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner presents a flight risk or danger to the community.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within seven (7) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any

exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    **March 10, 2026**                          /s/ *Sheila K. Oberto*

UNITED STATES MAGISTRATE JUDGE

10